# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

DOMINIC ZATRAUM MATHEWS     *

Petitioner     *

v     *     Civil Action No. CCB-16-277

KATHLEEN GREEN and     *
THE ATTORNEY GENERAL OF THE
STATE OF MARYLAND     *

Respondents     *

        ***

## MEMORANDUM

Petitioner Dominic Zatraum Mathews, an inmate confined at Eastern Correctional Institution in Westover, Maryland, seeks federal habeas corpus relief from a sentence imposed as a result of his May 1, 2013 guilty plea in the Circuit Court for Baltimore City. ECF No. 1. Respondents' directed response asserts that the claims are procedurally defaulted and there has been no establishment of cause and prejudice permitting this court to reach the merits of the claims asserted. ECF No. 5. Mathews' court-directed reply addresses and disputes respondents' assertion. ECF No. 8 and 9. The issues pending before the court have been adequately briefed; no hearing is necessary for disposition of those issues. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2016); *see also Fisher v. Lee*, 215 F.3d 438, 454-55 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the reasons that follow, the court denies the petition and declines to issue a certificate of appealability.

## Background

The facts the State was prepared and able to establish at trial, as agreed by the defense, were described by the State's Attorney at the guilty plea proceeding. ECF No. 5-2. On January 17, 2012, Mathews broke into Avery Whitmeyer's apartment in Baltimore City and bound her with neckties. Mathews and Whitmeyer had been in a relationship, but Whitmeyer had ended the relationship after refusing to marry Mathews. After breaking into her apartment, Mathews produced a handgun and threatened to kill Whitmeyer if she did not marry him. Whitmeyer pleaded for her life. *Id.* at pp. 37-39.

During the encounter with Mathews, Whitmeyer was able to convince him to take her to get something to eat. Mathews carried the gun with him at all times during the trip. Upon returning to Whitmeyer's apartment, Mathews restrained her again and the two began to argue about the future of their relationship. Mathews then shot Whitmeyer in her abdomen. *Id.* at p. 38.

Whitmeyer lost consciousness after being shot and when she awoke, Mathews was standing over her making statements about finishing the job and that he was not going to jail for shooting her. *Id.* Whitmeyer managed to convince Mathews that if he took her to the hospital she would not only marry him, but would not report that he was the person who shot her. *Id.* Mathews instructed Whitmeyer to tell the hospital personnel that she had been robbed and shot during the course of the robbery. *Id.* She agreed to the story and Mathews drove Whitmeyer to the hospital, discarding the gun and the neckties en route. *Id.* Mathews was arrested at the hospital and charged with attempted murder and use of a handgun in the commission of a violent crime.

Mathews' attorney, Rodney Gray, approached the bench before the jury trial resumed on May 1, 2013, indicated that Mathews was willing to plead guilty, and began a discussion regarding the sentencing parameters of the last plea offer from the court. ECF No. 5-2 at pp. 5-6. Defense counsel's recollection was that the offer was for life, all suspended but 20 years but the judge indicated "I was at life, suspend all but 23, wasn't I?" *Id.* at p. 7. The State's Attorney agreed to that recollection, but objected to the sentence because he believed it to be too far below the guidelines. *Id.* at pp. 6, 9. Ultimately the dispute was settled when the court indicated it would set the range for Mathews' sentence at a floor of life, suspend all but 20 and a ceiling of life, suspend all but 23. *Id.* at pp. 9, 16-17. There was no dispute concerning a five year concurrent sentence without parole to be imposed for the handgun offense.

During the guilty plea colloquy Mathews was advised by his attorney that any appeal taken would be by application for leave to appeal and the permissible grounds for such an appeal would be severely limited. ECF No. 5-2 at pp. 27-32. One ground Mr. Gray advised Mathews he could raise in an application for leave to appeal the guilty plea was ineffective assistance of counsel. *Id.* at pp. 28-29. Specifically, he advised Mathews:

> MR. GRAY: The other thing you could argue is that you've had ineffective assistance of counsel. I had a bad lawyer and the only reason I'm doing this, or one of the reasons why I'm doing this is because I had a bad lawyer and I had no other choice but to enter this guilty plea.
>
> \*\*\*
>
> That I had a bad lawyer and my lawyer had me – caused me to enter this guilty plea. So have I done everything you've asked me to do on your behalf?
>
> THE DEFENDANT: Yes.
>
> MR. GRAY: Did I do anything you told me not do? Like, you said, Mr. Gray, don't do certain things and I did them anyway?
>
> THE DEFENDANT: No.

> MR. GRAY: Okay. So based on – are you generally satisfied with the services that have been offered to you from myself and my office in reference to this case?
>
> THE DEFENDANT: Yes.
>
> MR. GRAY: So based on your responses, if you tried to take application for leave to appeal and said I had ineffective assistance of counsel, you'll probably lose on that argument.

*Id.*

At the August 21, 2013 sentencing proceeding, Mathews was again advised of his right to file an application for leave to appeal by counsel. ECF No. 5-3 at pp. 17-18. Specifically, Mathews was advised as follows:

> MR. GRAY: Mr. Mathews, you have 30 days to file the appeal that I advised you of when you took this plea. You have 90 days to ask the Court to reconsider or modify your sentence. You also have a right to file for a three-judge panel. Three judges, other than Judge Welch, from this Circuit Court here in Baltimore City, can review your case. I caution you because if you file that request for that three-judge panel review and that hearing is set, although that three-judge panel can lower your sentence, they could keep it the same, but more importantly, they could increase your sentence to the statutory maximum, and once that hearing is scheduled, you may not be allowed to withdraw that request.
>
> So I ask – I advise you to consult with me before you exercise any of those rights. And if you choose [*sic*] to do so, you must do so in writing with the Clerk of the Court within that time frame. Do you understand that?
>
> THE DEFENDANT: Yeah.
>
> MR. GRAY: Any questions?
>
> (No audible response.)

*Id.*

Mathews did not file an application for leave to appeal following denial of his Motion for Modification and/or Reduction of Sentence which was filed on November 15, 2013, and

4

subsequently denied on December 11, 2013. ECF No. 5-5 at p. 4. Mathews instead filed a petition for post-conviction relief on July 7, 2014. *Id.*

Mathews claimed in his petition for post-conviction relief that he received ineffective assistance of counsel because counsel failed to discover and introduce evidence from a crime-watch video camera stationed outside of Whitmeyer's apartment which would have shown her leaving her apartment on her own on the day of the offense and failed to discover and produce phone records between Mathews and Whitmeyer to refute her claim she had not spoken with him in several months. ECF No. 5-4 at pp. 1-2. Further, Mathews claimed counsel was ineffective because he failed to timely seek a subpoena for records of Whitmeyer's use of her Independence Card from the Department of Social Services which would have shown she went grocery shopping on the date of the offense. *Id.* at p. 2. He also claimed that counsel was ineffective because he failed to investigate Mathews' claim that Whitmeyer was under the care of a psychiatrist, diagnosed with bipolar and schizophrenia, and had stopped taking prescribed medications several months prior to the incident. *Id.* In connection with his allegation that Whitmeyer suffered serious mental illness, Mathews assigns error to his attorney's failure to impeach her testimony that she only suffered from depression when he was in possession of proof otherwise. *Id.* Mathews then observed that: "[w]hile I am not saying that if these items of evidence were discovered and/or presented, that they would be proof of innocence," the consideration of such evidence would prove Whitmeyer was lying and "at the very least cast doubt in the minds of the jury as to the defendant[s'] guilt." *Id.* at p. 5.

The post-conviction court denied relief without reaching the merits of Mathews' claims because he did not raise the claims in an application for leave to appeal the guilty plea. ECF No. 5-5 at p. 8. In his application for leave to appeal the denial of post-conviction relief, Mathews

claimed through counsel that the post-conviction court erred when it did not reach the merits of his claims, noting that the Maryland appellate courts have consistently held that post-conviction proceedings are the proper vehicle to raise ineffective assistance of counsel claims. ECF No. 5-6 at pp. 1-2. The application for leave to appeal was summarily denied by the Maryland Court of Special Appeals. ECF No. 5-7.

## Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall*, 572 U.S. 415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not, on that ground alone, conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where

7

state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*.

**Analysis**

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-51 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 45-46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default also may occur where a state court declines "to consider the ... merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

As the Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). ... A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to

8

consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent.[1] *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id.* (quoting *Murray*, 477 U.S. at 488) (internal quotation marks omitted). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995).

In its decision declining to the reach the merits of Mathews' claims, the post-conviction court first observed that Mathews was informed that a claim of ineffective assistance of trial counsel would need to be raised in an application for leave to appeal. ECF No. 5-5 at p. 8. Mathews did not do so and the post-conviction court found that he knowingly and intelligently waived the allegations of error. *Id.* Further, the court found that Mathews had not overcome the presumption of a knowing and intelligent waiver, because pursuant to Md. Rule 4-402(a)(7) he was required to include a statement of facts or special circumstances to show that the allegation of error had not been waived. *Id.* Mathews did not include those assertions in his petition, nor did he provide the post-conviction court with any testimony or supporting facts to establish special circumstances existed to excuse his waiver. *Id.* When Mathews did not file an appeal

---

[1] Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

9

within 30 days of the sentencing date, he waived the ineffective assistance of counsel claims he later attempted to raise in the post-conviction petition. *Id.*

Mathews asserts in response to the answer that he never agreed to the statement of facts as presented by the State in the guilty plea proceeding; that there were several agreements discussed and he did not realize until the sentencing proceeding that the agreement was not the one he had agreed to; and that when he was asked if he was *generally* satisfied with counsel's performance it did not mean he was *totally* satisfied. ECF No. 6 at p. 1. He further alleges that the state court's conclusion that his ineffective assistance of counsel claim was waived because it was not raised in an application for leave to appeal the guilty plea was erroneous because such a claim is generally not cognizable unless raised on post-conviction.[2] *Id.* at p. 2. In addition, he claims that Mr. Gray told him to consult with him before filing an application for leave to appeal and when Mathews did so, Mr. Gray did not tell him to file an appeal, but advised to file a post-conviction petition. *Id.* at pp. 2-3. He maintains that he therefore did not intelligently and knowingly waive the claims. *Id.* at p. 3. He further claims that had Mr. Gray procured any of the evidence he requested he would have proceeded to trial and that it was only after Mr. Gray told him that there was no evidence to present in defense that Mathews considered any of the plea offers. *Id.* at p. 4. He also states that any failure to raise an ineffective assistance of post-conviction counsel was caused by the public defender's office that represented him on the appeal of the post-conviction decision and that failure should be excused on that basis. *Id.* at p. 3. In Mathews' second reply, filed after this court's direction to do so, Mathews raises the same arguments. ECF No. 8.

---

[2] While it is generally true that ineffective assistance of counsel is a claim appropriately raised for the first time in a collateral proceeding, in the circumstance of a guilty plea the claim that trial counsel was ineffective and caused the defendant to plead guilty is appropriately raised in an application for leave to appeal and Mathews was advised of this fact by counsel in open court.

The post-conviction court's decision is firmly grounded in a state procedural rule. *See* ECF No. 5-5 at p. 8, citing Md. Rule 4-402(a)(7). As such, the ineffective assistance of counsel claims raised here are procedurally defaulted. Further, the post-conviction court's findings of fact – that Mathews was adequately informed of the possible bases for an application for leave to appeal the guilty plea; he knowingly and intelligently waived the ineffective assistance of counsel claims when he failed to file an application; and he failed to present evidence to rebut the presumption of a knowing and intelligent waiver – are entitled to this court's deference.

Despite the clear procedural default that occurred in this case, the court must consider whether, in the interests of justice, the merits of Mathews' claims should be reached. Although Mathews asserts he never admitted his guilt, he acknowledged all of the rights he was waiving, including a defense that he did not commit the crime. ECF No. 5-2 at pp. 32-36. In addition, Mathews acknowledges in his post-conviction petition that the missing evidence he asserts his attorney should have procured would not have established his actual innocence. ECF No. 5-4 at p. 5. To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial. *Schlup*, 513 U.S. at 324. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* at 316. New evidence may consist of "exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir.1999) (citation omitted). The new evidence must be evaluated with any other admissible evidence of guilt. *Wilson*, 155 F.3d at 404-05. The new evidence must do more than undermine the finding of guilt; it must affirmatively demonstrate innocence. *Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999).

An assertion that had [petitioner] known about the existence of the [new evidence], he would not have pleaded guilty and would have insisted on going to trial . . . is insufficient "in the absence of a showing sufficient to satisfy *Schlup*'s actual innocence gateway." *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995). It does not amount to "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup*, 513 U.S. at 316. The purported evidence Mathews asserts would have impacted his willingness to enter a guilty plea falls far short of this standard. The assertion that the victim lied about her mental health status is immaterial to Mathews' guilt or innocence and any evidence that she left her apartment without restraints during this ordeal was already admitted by the State. This is not a case where, in the interests of justice, the merits of the claims should be addressed notwithstanding the procedural default that occurred. Federal habeas relief shall be denied.

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed.

A certificate of appealability may issue only if the prisoner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner satisfies the standard by demonstrating that "jurists of reason could disagree with the district court's resolution of [the] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S.Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). When a petition is denied on procedural grounds, the petitioner may

meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

Mathews' claims are dismissed on procedural grounds. Upon review of the record, Mathews has not made the requisite showing to warrant a certificate of appealability and therefore this court declines to issue one. Mathews may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate order denying the petition and declining a certificate of appealability follows.

10/30/18
Date

Catherine C. Blake
United States District Judge